All right. Next up is 24-1378, Timken v. South Denver Cardiology. Again, Mr. Schack-Snyder. Your Honors, David Schack-Snyder for the plaintiff's appellants. May it please the court. The Timken case adopted the Sweeney opinion with two exceptions. It made two comments. One, that the SDCA policy was separate from the Part 12 rules. And two, that this was just an employer vaccination mandate, but like it was held in some other cases. We think that is incorrect. It's not just an employer vaccination mandate when the employer is a signatory to the CDC provider agreement and is a signatory to the federal-wide assurance agreement with the federal government, both of which we've alleged that we are third-party beneficiaries because there are rights that affect, that are designed for the interest of my clients, the ones who are being subjected to investigational drugs. SDCA is sophisticated in this arena, being an FWA signatory, running IRBs, and being a signatory to the provider agreement where it agreed to abide by the laws that govern these drugs. But you're not saying you're a third-party beneficiary for purposes of a contract claim, which is ordinarily where we see beneficiary status being alleged. You're arguing that that is a gateway to a prosecuted 1983 claim. No, that's a separate from 1983. We brought third-party beneficiary actions under these contracts. So you are arguing a brief one. We are, but it wasn't addressed by the trial courts. By the district court, it wasn't addressed. So we believe that's error, reversible error. The other thing I mentioned was the Timkins court said that the SDCA policy was separate from Part 12. It is nowhere separate from Part 12. The SDCA policy specifically says that it was issued in compliance with Part 12. And Part 12 is very specific in what it requires the health care employers to do. They shall develop and implement a policy. They must get 100% of their employees injected with these drugs. They shall address certain topics in their policy. They shall report the workforce vaccination rate twice a month beginning on October 1. This is in no way separate from Part 12. And the issue that we have in Timkin that we did not have in Sweeney is state action. Because SDCA is not, like UCHA, a government entity. But we say that they are acting under color of law because Colorado owed constitutional and federal statutory duties to the plaintiffs. They delegated those duties to the SDCA under this provider agreement. SDCA agreed to do that. They agreed to perform governmental functions. What are the governmental functions? Again, it goes back to what these drugs are. These are not FDA licensed drugs. If they were, there would be no need for a CDC program. There would be no need for the government to buy all of them. The reason that this is a governmental function because only the federal government can authorize the use of investigational emergency use drugs. And only they, when they buy all of them and create a program for distribution, they designed it. It even says in the provider agreement, this is a collaboration by you, the signer, SDCA, and the federal government and the state government. It brings into color of state law when it requires the distribution to go through the state's immunization cooperative agreement it already has with the federal government. Be better viewed as just another health and safety mandate from either the state or the federal governments. And those typically wouldn't create a private right of action under the constitution for an employee. What's the? That's the legal distinction. What kind of mandate are you referring to? Any sort of health requirement that the cardiology group has to comply with, cleanliness of the operating room. That's not gonna create, this is. No, but you don't have to use federal government property to achieve the cleanliness. Why does that matter? Because the. Constitutionally. Constitutionally, because if you're looking at what is, and we're looking at what is state action, what is in color, under color of law, is if it's, how can a private, here's why. SDCA could never go directly to Pfizer outside of the government and say, you know what? We wanna do an employee vaccination mandate and we wanna use your drug, the Pfizer BioNTech vaccine, the EUA one. We would like to buy it directly from you. It can't happen. The federal government owns all of them. The federal government said for distribution of these drugs, it must go through the CDC program. So there is no mechanism for SDCA to get the drugs in order to have the mandate. So unlike cleanliness, of course, they can clean their facility, but they don't need the federal government to help them or to do it. Here, they must go through the federal government. They must go through this federal program. There's no way for them to do this without the CDC program. That's why they're acting under color of law. Well, that argument is they're acting under color of federal law, not state law. And that's why I mentioned the collaboration, the way it was designed, agreed. If the CDC program was not in existence and it was in a direct relationship, yes, there would be no state law under which SDCA could come. But because the provider agreement says specifically, this is a collaboration, it must go through the state's immunization cooperative agreement that's already in place. I understand. So, yes, they are acting under color of state law when they are mandating the use of the drugs that are owned by the government and exclusively available through the CDC program. What Timken also said was that, you know, it adopted the Sweeney decision. Well, Sweeney said we didn't identify constitutional rights, but in Timken, we did in paragraph 300. We said that the defendant's actions under color of state law and in deprivation of constitutional rights unlawfully subjected plaintiffs to the use of investigational medical products under threat of penalty. So we alleged constitutional grounds. We alleged federal statutory grounds. And again, we believe there is a private right of action. I don't even say private right of action because a private right of action is different than a 1983 claim. A private right of action is one that is in the statute itself and says, this is how you do it, like an EEOC Title VII type situation. A 1983 claim is different than a private right of action. It's simply the enforcement of a conferred right through 1983. So, because there were signatories to the contract, because they were distributing federal property, they were joint actors with the federal government and the state government. And because there has to be a distribution arm for the drugs. And these are the signatories to the contract. So I would like to reserve the balance of my time for rebuttal, thank you. May it please the Court, I'll reintroduce myself for the record. My name is Lauren Davison, and I represent the Executive Director of the Colorado Department of Public Health and Environment, Appellee Jill Hunsaker-Ryan. I'll endeavor to leave five minutes of the time for counsel for SDCA to address the state action question. As with the previous case, which concerned nearly identical claims, the Executive Director respectfully requests this Court affirm, because there is no fundamental right at issue, none of the statutes, regulations, or other documents plaintiffs rely on create enforceable rights through Section 1983, and the Executive Director is entitled to qualified immunity on the 1983 claims. I'd like to quickly touch on a few points before getting into any more detail on these. So first, there were some questions earlier about what the statutes say as far as consequences. Neither the PREP Act nor the EUA statute says that it's a voluntary program without consequence, that there is an option to refuse or accept without consequence. Plaintiffs here exercise their option to refuse. Courts, multiple courts have said there can be consequences for that refusal to accept the product when it is an employment condition. Next, I'd like to note that the PREP Act's preemption provision cannot by itself create an enforceable right. We didn't cite this in our brief because we felt the preemption question was not adequately briefed in the opening brief, but this Court has held in CNSP versus Santa Fe, and that's 755 Federal Appendix 845, that to enforce a statute's preemptive effects, the plaintiff must first plausibly allege that the statute itself confers a federal substantive right. The PREP Act here cannot confer any substantive right because it does not meet Tlaibsky and Medina's stringent, restrictive, and demanding test as the Supreme Court has described it. I would also note that the Court has made clear in Gonzaga and Medina that this restrictive test, as far as using unambiguous rights-conferring language, applies to both private rights of action brought directly under the statute, or claims that seek to enforce the alleged right through 1983, so there's no difference here as far as that's concerned with the relevant case law. I would also note that as far as both the PREP Act and the EUA statute goes, both of them are framed in terms of the regulated persons or entities, which Gonzaga says cannot create federal rights. Both of them have an unmistakable focus on the Secretary of the Department of Health and Human Services' obligations to ensure that participants in these programs are informed of certain information. Both of the statutes also speak to national compliance with EUA requirements, not individual instances of refusing or accepting the product, which is similar to the FERPA statutes that were at issue in Gonzaga. Both statutes also contain limits on who can sue or what type of suits can be brought, and in two claims, or two cases, considering the exact claims at issue here, the Bridges case out of the Southern District of Texas and Brock v. Kaiser in, I believe, Oregon, have said that because of those limitations, that indicates Congress intended to preclude Section 1983 enforcement. The statutes at issue provide nothing more than a benefit, not a federal right. The benefit is to be informed of certain information. That's it. Without meeting Medina's requirement of essentially using the word right to refuse, it cannot be found here. I'd also like to note, plaintiffs rely very heavily on the provider agreement. As a threshold issue, neither the Executive Director or CDPHE, they did not allege that they were signatories, particularly the Executive Director. CDPHE, as an entity, is not at issue on this appeal because the official capacity claims have been dismissed under the 11th Amendment, so we're only talking about the Executive Director, and they did not allege she was a signatory. So even if the provider agreement could create a right, which it can't because it wasn't created by Congress, it's not a statute, that can't support a claim here. I did want to briefly touch on the substantive due process piece. There was some discussion before about looking at, there's been discussion of the efficacy of the vaccines, and it's really important to note that whether or not this meets rational basis is looking at the time that it was implemented. We can't really use hindsight here. And some of those arguments, many of those arguments were actually made very early on and have been rejected by multiple courts. And then most recently, the Carvalho case out of the Ninth Circuit reiterated what Jacobson had already stated, that it's not for the courts to question the scientific efficacy as long as there is enough scientific basis for the. All right. Give it a moment, we'll see. What'd you find out? Okay. What a super-duper time. We'll try to power through. Okay, okay. Apologies. Oh, well, Leslie, I think I did just want to quickly note that in this case, unlike in the Sweeney case, the third-party beneficiary claim has been either abandoned or waived. There was no argument made on appeal in appellant's briefing as far as that claim. And there is only one, actually only one mention of the phrase third-party beneficiary at all in the opening brief. So we would submit that claim as not actually before the court. And we're only looking at Section 1983 claims here. Because we're only looking at Section 1983 claims, this court has an easy avenue to affirm underqualified immunity as to the executive director. Notably, plaintiffs didn't really properly respond to this. They do raise a, or they concede, they concede that there's no clearly established rights here by arguing the ministerial duty exception. That is a very narrow exception that requires precise action that must be taken. And we don't have that in any of the statutes here. They're talking about what the secretary has to do, not what people or public health entities such as CDPHE has to do. No court has agreed with any of plaintiff's asserted rights. No court has found an absolute and fundamental right, constitutional or statutory right, to refuse vaccination during a pandemic. The Second, Third, Sixth, Seventh, and Ninth Circuits have all held that COVID-19 vaccine regulations or policies do not violate a fundamental right. This court, the Third, Fifth, Sixth, and Ninth Circuits have all rejected claims under the EUA statute. Even if we accepted plaintiff's investigational drug theory, no court has found that mandating these specific drugs violates any constitutional or statutory rights. We've cited in both of our briefs to several cases that I've already found that government defendants are entitled to qualified immunity on these types of claims. Four district courts in cases brought by plaintiff's counsel with identical theories presented found that those government defendants were entitled to qualified immunity. So because plaintiffs cannot meet their burden to show that any of the rights allegedly violated were clearly established at the time of defendant's conduct. What would it take, what would it take to make that kind of a showing? To meet clearly established? They would need to point to something from either this court or the Supreme Court that's on point and controlling. This court hasn't had the occasion to consider this particular theory and neither has the Supreme Court. What would be the boundaries of something that is within the realm of clearly established law? It doesn't have to be this precise drug in this precise time, does it? Or do you think it does? I think, yes, because they're relying on such a narrow theory. This court or the Supreme Court would have had to say, yes, under the EUA statute or the PREP Act, there's a right to refuse these drugs. There is a fundamental substantive due process right to refuse these drugs. Because they recognize, I mean, and they say Jacobson doesn't apply, but Jacobson is obviously a huge problem. Like even under this theory, Jacobson's requirements are still met as several circuit courts have already specifically found. So it would have to be fairly narrow. But even if we're looking broader, this court hasn't abrogated Jacobson in any way. It actually, early on in the pandemic, cited Jacobson when denying a preliminary or injunction pending appeal noting, the state has the right to protect the public health during a public health emergency. So there's just nothing on point. And even if we're looking outside of the circuit, to a wealth of agreement by other courts, there's no agreement. No one has agreed with this. And the one court that did, for a moment, agree with the theory of, because these weren't traditional vaccines, it was unwanted medical treatment, vacated that opinion. That was the Ninth Circuit when it went en banc. It vacated the panel's opinion and said, that's not correct. This is not how we look at it. Jacobson is broader than that. So for those reasons, we would submit that it still controls and qualified immunity bars all of their 1983 claims. Unless the court has any further questions, I would respectfully request that it affirm. Thank you. Thank you, counsel.  Well, good morning, your honors. My name is James Spung. May it please the court. I'm here on behalf of the other two defendants in the Timkin matter, that is South Denver Cardiology and Troy Stockman. For ease of reference, I'll refer to both of them as SDCA. SDCA was dismissed on two independent bases. Number one, failure to allege the deprivation of a federally protected right. That's what a lot of the discussion is focused on, both in this case and the Sweeney matter before us. And then before even getting there, the district court dismissed SDCA for a threshold reason, and that is that appellants failed to allege state action. That's what I'll speak briefly about this morning. As the district court found, that conduct, the conduct being the implementation enforcement of the vaccine policy was SDCA's decision without any state involvement. It created a policy that complied with the state's rule. They controlled how that policy was enforced. That included who qualified for what exemptions and most importantly, how to enforce their policy as to their specific employees. That's SDCA's employees. And then in appellant's case, of course, SDCA elected to end their employment, and there are no allegations, nor do I believe there could be, that the state had anything to do with that particular decision. Under this court's precedence, that isn't state action. That's the action by a private entity. Now, appellant's argument, and we heard a little bit about that previously, and that is also the argument raised in the briefs, doesn't really engage the state action point in the right way. Their argument, as you heard, is that SDCA isn't necessarily a state actor because it's signed up to be a vaccine administrator under the CDC program. That, and therefore, it was necessarily a state actor for all purposes. That's not right. As we know, as the 10th Circuit precedents hold and make clear, you can be a state actor for some purposes, but not others. And what appellants are focusing on is SDCA's role as a vaccine provider, as a provider to its patients, and not as its role as an employer to its employees. And that is who appellants are, or were. They were SDCA's employees. So that's the problem. It's conflating the context here. And the allegations make very clear appellants were SDCA's employees. They never alleged that they were vaccinated by SDCA or vaccinated at all. They never alleged that the vaccine policy required them to get vaccinated by SDCA. It just said, get vaccinated. Instead, they were employees subject to SDCA's at-will employment policies that were not implicated by all of these statutes and authorities that we're referring to in these Section 1983 claims. So, whatever SDCA could have been deemed when administering vaccines to patients, that's just not the relevant analysis here. The question is whether SDCA was a state actor when it implemented this policy as to its employees, and then enforced it as to the appellants specifically. And under 10th Circuit law, and in line with about half a dozen other cases around the country that have dealt with this same question under state rules and then private vaccine policies, the answer is that was not state action by SDCA. That's what the District Court found in dismissing the claims as the SDCA on this particular element. And I'm happy to address any specific questions the Court has. Otherwise, we would just simply ask that the Court affirm. Thank you, Counsel. Thank you, Your Honor. That's a rebuttal remaining. The PREPAX language says the Secretary shall ensure that potential participants are educated with respect to contraindications, the voluntary nature of the program, and the availability of potential benefits and compensation under this part. That is focused on the potential participants. It talks about there that the Secretary shall ensure the voluntary nature of the program. What authority has the CDPHE come forward with and shown this Court that it has the authority to turn a PREPAX program into an involuntary program? It does not have that authority. Are there any cases on the clearly established prong of qualified immunity, do you have any cases that support you as far as that being a cognizable right, federal right, under the 1983? The Cruzan case is a case that establishes that individuals have the right to refuse unwanted medical treatment. Is it a 1983 case? It's not a 1983 case. So the answer is you don't have any cases. But what we're talking about clearly established is what clearly established right are we talking about? The clearly established right is the right to determine what does and does not go into one's body. That's been clearly established for decades. Generally clearly established means that there's a case from the Supreme Court or one from our circuit that announces as a holding the point that you're trying to drive home. And this was an issue with the Sweeney opinion that Timken adopted. And that the judge said, the district court kept saying, well, there's no legal authority for these arguments. And all the arguments are with regard to these drugs, this COVID-19 pandemic, the EUA authorization, the PREP Act declaration. That's never been, it's never happened before. These are cases of first impression. So when the council opposite cites to all these district court opinions that went against us, those don't control this court. They don't bind this court. And when they talk about- They don't need a case saying that there's not a right. You need a case saying that there is a right. Do you agree with that or no? I agree, but there has to be a first case. Does that mean that the first case can never win? It's kind of like dog bite cases. The first person that gets bit by the dog can't recover, but the second can? Are we the trailblazers to say- That's exactly the way qualified immunity works, actually. Well, and so going to qualified immunity, where since the CDPHE cannot cite to any authority to turn the PREP Act into an involuntary program, those are ultra-virus actions by the director. So you don't get qualified immunity for engaging in an activity that's outside of your authority. So, there's the state, the state was the signatory. The state agreed to abide by and be a collaborator in the CDC provider agreement. To then say, oh, well, we can carve out any state department because each state department didn't sign the contract. That's, we don't agree with that argument. Carvalho, the decision determined that that case was, it was declaratory and injunctive relief. It was not a claim for damages like we're bringing. We don't see that case as controlling on our plaintiffs. So, with regard to state action, SDCA is wearing two hats. Yes, they're a private employer normally, but when they decided to become a vaccination provider under the CDC provider agreement, they decided that they're gonna wear another hat. So now, what they're saying is that, if a patient comes in and says, you know, I wanna find out about these COVID shots, and they give them the fact sheet, and that patient says, you know what, I've changed my mind, I don't want it. They're gonna say, fine, you can leave, no penalty. But if you're an employee, you don't have that right. So, we're gonna punish you. They don't have the right to do that. They can't just take off the hat from the CDC provider agreement, put on the employer hat and say, this is what binds me now. Would that also be true for entities like Walmart or Walgreens that also provided vaccinations? If Walgreens was, if you could go into a Walgreens and get a COVID shot, they signed the provider agreement. Maybe a state actor under your theory? Only with regard to the shots and communications with the shots, interactions with anyone about them. Yes, they are wearing their CDC provider agreement hat at that point, and they can't just rely upon, you know what, I'm just gonna be an at-will employer for purposes of you, but not for you. That's an equal protection issue. And as a state actor, are they acting on behalf of the state of Colorado or acting on behalf of the United States of America? Both, because it's a collaboration and the provider agreement says that all of these drugs must be distributed through each state's immunization cooperative agreement, which is statutorily authorized by the state. So yes, they are acting under color of state law when they are agreeing to collaborate with the state and the federal government to distribute these federal drugs. Let's see if my time's almost up, so, unless there's anything else. We appreciate your arguments. Counsel is excused and the cases are submitted. Thank you. Thank you.